**Jeffrey Clayton KANDIES Petitioner,**

v.

**Roby C. LEE, Warden, Central Prison, Raleigh, North Carolina, Respondent,**

**No. 1:99 CV 00764.**

United States District Court, M.D. North Carolina.

March 4, 2003.

David Kent Williams, Jr., Greensboro, NC, Eric J. Foster, Asheville, NC, for Petitioner.

Edwin W, Welch, Attorney General, Raleigh, NC, for Respondent.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This matter is before the Court on Jeffrey Kandies' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. # 8]. For the reasons set forth below, the Recommendation of the United States Magistrate Judge to deny the Petition for Writ of Habeas Corpus [Doc. # 20] is ADOPTED and the Petition is DENIED.

### I.

The facts as found by the Magistrate Judge [1] are adopted and elaborated on

1. See Recommendation of United States Magistrate Judge at 264–265.

only when necessary to respond to the petitioner's (Petitioner) objections to the Magistrate Judge's Recommendation. The facts are as follows: Petitioner was convicted for the first degree murder and first degree rape of Natalie Lynn Osborne, the four-year-old daughter his fiancee, Patricia Craven.[2] Ms. Craven had three children including one child she had with Petitioner. At the time of the incident Ms. Craven and Petitioner had separate residents approximately ten miles apart.

On Easter Monday, April 20, 1992, both Ms. Craven and Petitioner were with Natalie until sometime between 4:00 and 4:30 p.m. Around that time, Petitioner left to go to the store and did not return until 7:00 p.m. During that period of time, Petitioner stopped at a convenience store. He complained about his hand hurting and said he had been in a fight with his brother. The clerk at the convenience store noticed the hand was beginning to swell and suggested Petitioner permit another customer, a medical technician, to look at the hand. Petitioner left immediately.

When Petitioner returned to Ms. Craven's home at 7:00 p.m., Natalie could not be found and Petitioner reported her missing. An extensive search was conducted to find Natalie. Around midnight, Petitioner returned to the convenience store asking if the clerk had seen Natalie. At that time, the clerk observed black garbage bags in the back of Petitioner's truck.

The police, believing that Petitioner and Ms. Craven may have hidden Natalie at Ms. Craven's residence in order to deny Natalie's father access, searched Petitioner's residence the next day. The police did not locate Natalie.

On Wednesday, April 23, 1992, Petitioner was questioned at the police station.

The police returned Petitioner to Ms. Craven's residence around 1:00 a.m. that night. When he arrived, Ms. Craven asked him if he knew what happened to Natalie and he volunteered that he had hit Natalie with his truck on Monday, April 20, 1992. Petitioner claimed that he panicked because he had been drinking and he took Natalie to his house to clean her up. He stated that Natalie did not look right, so he concealed her and her clothes in a garbage bag which he put into a bedroom closet. After the exchange, Ms. Craven immediately called the police. Petitioner was returned to the police station where he provided a more detailed statement.

The police searched Petitioner's residence, with his permission, and found Natalie's body buried under carpet pieces and a pile of clothes in a bedroom closet. Natalie's bloody playsuit and a bloody pair of panties were found inside a garbage bag in the closet.

At trial, a forensic pathologist testified that there were blunt force traumas on Natalie's head, neck, skull, back, and both sides of her body. Some bruises were small and rounded and distributed in a pattern that suggested that they were made by an adult hand. Natalie's pelvic region was also injured with bruising on both sides of the vagina which was full of blood. A blunt force trauma caused a tear in the back wall of the vagina and the vagina opening was gaping. The pathologist opined that the injuries indicated sexual assault had occurred at or about the same time as the time of death.

After the results of the autopsy were revealed on April 23, 1992, the police interrogated Petitioner and mentioned the possibility of sexual assault. Petitioner responded that he had already told Ms.

---

2. The facts in this case are also set out in *State v. Kandies,* 342 N.C. 419, 430–433, 467 S.E.2d 67, *cert. denied* 519 U.S. 894, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996).

Craven that the police would say that he had done something like that to Natalie. Instead, Petitioner said he had taken Natalie to his house and put her in the bathtub to determine how badly she was injured. Petitioner stated that he could not handle the situation and may have strangled Natalie, but he did not sexually assault her. The police found blood in numerous places in Petitioner's residence and in his truck.

Petitioner did not present any evidence during the guilt-innocent phase of his trial, and the jury found Petitioner guilty of first degree murder on both felony murder and premeditation and deliberation premises. The jury also found Petitioner guilty of first degree rape.

During the sentencing phase, Petitioner presented evidence from a clinical psychologist who testified that Petitioner used alcohol and marijuana on a daily basis for several years. The psychologist opined that Petitioner was suffering from acute intoxication that may have affected his judgment and ability to control his emotions. The psychologist further opined that Petitioner had a mental disorder and that his ability to appreciate the criminality of his actions was impaired.

The jury found aggravating circumstances on the grounds that Petitioner committed the act during the commission of first degree rape, and further that the murder was especially heinous, atrocious or cruel. The jury also found three of the five proposed statutory mitigating circumstances and eighteen of the twenty-eight non-statutory mitigating circumstances submitted. The jury unanimously recommended a sentence of death, which the trial court imposed.

## II.

Petitioner appealed his conviction which was affirmed by the North Carolina Supreme Court. *State v. Kandies*, 342 N.C. 419, 467 S.E.2d 67, *cert. denied* 519 U.S. 894, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996). Petitioner filed a motion for appropriate relief in Superior Court, in which he alleged three things: (1) that his Sixth Amendment right to effective assistance of counsel was denied because his counsel failed to discover evidence that Petitioner had been sexually molested as a young child and offer that evidence in mitigation; (2) his counsel was not qualified to try a capital case; and (3) the evidence that Petitioner committed rape was insufficient.

Immediately prior to the Superior Court's decision, Petitioner's counsel requested to be relieved of representation. Contemporaneously, the Superior Court denied the motion for appropriate relief and allowed counsel's motion to withdraw. New counsel then petitioned the North Carolina Supreme Court for relief. In the Petition for Certiorari, Petitioner raised two additional issues: (1) the Superior Court should not have decided the motion for relief before affording a new attorney the right to submit additional briefing; and (2) the Superior Court erred by not affording Petitioner an evidentiary hearing.

The North Carolina Supreme Court remanded the matter back to the Superior Court for consideration of Petitioner's motion in light of that court's decision in *State v. McHone*, 348 N.C. 254, 499 S.E.2d 761 (1998).[3] In *McHone*, the court had found that under N.C.G.S. § 15A–1420 (c), a state post-conviction court must make written conclusions of law stating its reasons before denying a post-conviction motion alleging a violation of constitutional

---

**3.** *State v. Kandies,* 525 S.E.2d 185 (N.C.1998).

rights. *Id.* at 257, 499 S.E.2d 761. *McHone* further held that if a post-conviction motion merely alleges questions of law or if the supporting information to the motion would not affect the legal conclusion, then the motion can be denied without a hearing even if facts are in dispute. *Id.*

On review, the Supreme Court held that Petitioner was not automatically entitled to an evidentiary hearing simply because he alleged facts relating to constitutional issues, but it remanded for the Superior Court to specifically find whether or not an evidentiary hearing was required to resolve facts.

On November 30, 1998, Petitioner filed an amended motion for appropriate relief that attempted to raise three additional arguments: (1) that his counsel was ineffective for failing to offer evidence that someone else other than Petitioner had sexually abused Natalie; (2) that his counsel was ineffective for failing to request that the trial court submit additional non-statutory mitigating factors, and (3) that his counsel was ineffective for failing to request that the jury be instructed in accordance with the law of voluntary intoxication.

On April 29, 1999, the Superior Court determined there was no need for an evidentiary hearing because there was no evidentiary dispute about a dispositive fact. The court also denied Petitioner's motion to amend because the remand order from the North Carolina Supreme Court did not authorize an amendment. The court also stated that Petitioner should have included those claims in the original motion for appropriate relief filed May 8, 1997. The North Carolina Supreme Court summarily denied certiorari in an order dated August 19, 1999. *State v. Kandies,* 350 N.C. 843, 539 S.E.2d 640 (1999).

Petitioner filed a Petition for Writ of Habeas Corpus in the Middle District of North Carolina. The Magistrate Judge filed the Recommendations on December 14, 2000. Petitioner raises four objections to the Magistrate Judge's Recommendations. Petitioner argues that the Magistrate Judge incorrectly recommended that the following arguments be dismissed: (1) that the state court violated Petitioner's due process rights by addressing the motion for appropriate relief despite concluding he was represented in the motion for appropriate relief by counsel with conflict issues; (2) that Petitioner was denied due process of law because the MAR court denied an evidentiary hearing; (3) that Petitioner should have been allowed to amend his motion for appropriate relief after it was remanded by the North Carolina Supreme Court; and (4) that juror Mayberry should have been dismissed for cause. Each of the objections will be addressed separately.

### III.

The Magistrate Judge applied the correct standard of review. (Rec. of United Stated Magistrate Judge at 7). The standard of review is as follows: under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court reviewing a state court adjudication is required to give deference to that adjudication. 28 U.S.C. § 2254 (West.Supp.2002). A federal court reviews a state court adjudication only to determine whether the decision is contrary to established federal law or if it involved an unreasonable application of federal law. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

A decision is contrary to federal law: (1) if the state court comes to a conclusion opposite that reached by the United States Supreme Court; or (2) if the state court

decides a case with materially indistinguishable facts differently than the United States Supreme Court. *Evans v. Smith,* 220 F.3d 306, 311–312 (4th Cir.2000). A state court decision is an unreasonable application of federal law when a state court has identified the correct governing legal principle, but applies that principle unreasonably to the facts of the case in front of it. *Id.*

Under the AEDPA, if the state court has made factual findings on the merits, those findings are entitled to a presumption of correctness, which can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Therefore, the federal district court reviews findings made by the state court with a highly deferential standard of review. If, on the other hand, the state court decision was based on procedural grounds or otherwise did not consider the substantive merits of the claim, then those issues are subject to *de novo* review. *Boyette v. Lefevre,* 246 F.3d 76, 91 (2nd Cir.2001) (holding *de novo* review, rather than AEDPA deference, appropriate when the district court is unable to determine what the state court decided on a particular issue).

### A.

First, Petitioner argues that the state court violated his rights to fundamental fairness by addressing his motion for appropriate relief despite concluding that he was represented in the motion by counsel with conflict issues. On February 9, 1998, Petitioner's post conviction counsel filed a motion to withdraw due to conflict. The state court allowed counsel to withdraw, without appointing other counsel. Instead, the state court ruled on the motion for appropriate relief. The Magistrate Judge recommended that this argument be dismissed.

In the objection, Petitioner renews the argument that his due process rights were violated by the state court's actions. Petitioner argues that the due process rights which pertain to direct appeal and trial also apply to post conviction proceedings. Petitioner bases this argument on the United States Supreme Court's decision in *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). *Woodard,* however, is anything but helpful to Petitioner's argument. It was in *Woodard* that Justice Rehnquist writing for a plurality observed:

In *Evitts* [*Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ], the Court held that there is a constitutional right to effective assistance of counsel on a first appeal as of right. *Id.* at 396, 105 S.Ct. at 836. This holding, however, was expressly based on the combination of two lines of prior decisions. One line of cases held that the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal adequate and effective, including the right to counsel. *See Griffin v. Illinois,* 351 U.S., at 20, 76 S.Ct., at 591; *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The second line of cases held that the Sixth Amendment right to counsel at trial comprehended the right to effective assistance of counsel. *See Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). These two lines of cases justified the Court's conclusion that a criminal defendant has a right to effective assistance of counsel on a first appeal as of right. *Evitts, supra,* at 394–96, 105 S.Ct. at 834–36.

The Court did not thereby purport to create a new "strand" of due process

analysis. And it did not rely on the notion of a continuum of due process rights. Instead, the Court evaluated the function and significance of a first appeal as of right, in light of prior cases. Related decisions similarly make clear that there is no continuum requiring varying levels of process at every conceivable phase of the criminal system. *See, e.g., Giarratano,* 492 U.S., at 9–10, 109 S.Ct., at 2769–71 (no due process right to counsel for capital inmates in state postconviction proceedings); *Pennsylvania v. Finley,* 481 U.S. 551, 555–57, 107 S.Ct. 1990, 1993–94, 95 L.Ed.2d 539 (1987) (no right to counsel in state postconviction proceedings); *Ross v. Moffitt,* 417 U.S. 600, 610–11, 94 S.Ct. 2437, 2443–44, 41 L.Ed.2d 341 (1974) (no right to counsel for discretionary appeals on direct review).

523 U.S. at 283–84, 118 S.Ct. at 1251

■ In *Murray v. Giarratano,* 492 U.S. 1, 7, 109 S.Ct. 2765, 2769, 106 L.Ed.2d 1 (1989) (plurality opinion), the Court observed that states have no obligation to provide post conviction relief. A habeas Petitioner cannot claim constitutionally ineffective assistance of counsel in a post conviction proceeding when there is no constitutional right to counsel. *Wainwright v. Torna,* 455 U.S. 586, 588, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance). *See also Mackall v. Angelone,* 131 F.3d 442, 447 (4th Cir.1997) *cert. denied* 522 U.S. 1100, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998).

■ Even if there were a due process right to a conflict free counsel in a post-conviction proceeding, Petitioner fails to show that he suffered injury as a result of an actual conflict of interest. In order to establish a violation of due process, a defendant must show that an actual conflict of interest affected the lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). To establish an actual conflict of interest, Petitioner must show that his interests diverged with respect to a material fact or legal issue. *Williams v. French,* 146 F.3d 203, 212 (4th Cir.1998), *cert. denied,* 525 U.S. 1155, 119 S.Ct. 1061, 143 L.Ed.2d 66 (1999). Filing of a lawsuit and a bar grievance does not *per se* create an actual conflict. *United States v. Burns,* 990 F.2d 1426, 1438 (4th Cir.1993).

■ The record in Superior Court shows that on February 3, 1998 in a letter to the court, Petitioner's counsel expressed concern because Petitioner's mother had alleged that counsel conspired with the State against Petitioner and had filed suit against counsel. Petitioner's counsel called the allegations farfetched and felt that the suit against him could lead to a possible conflict of interest. The Superior Court allowed counsel's motion to withdraw, but did not find an actual conflict of interest based on the record. Instead, the Superior Court allowed counsel's request because Petitioner's mother had attempted on two occasions to bring civil actions against him. The court appointed counsel to serve in further proceedings. Petitioner's case had already been prepared and briefed. Petitioner provides no evidence of actual injury.

The Magistrate Judge correctly observed that claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief. *Wright v. Angelone,* 151 F.3d 151, 159 (4th Cir.1998). Petitioner has no right to effective assistance of counsel in his state Motion for Appropriate Relief hearing. *Mickens v. Taylor,* 240 F.3d 348, 363 (4th Cir.2001)(en banc).

### B.

■ Second, Petitioner argues that the state violated his right to fundamental fairness when it denied his motion for appropriate relief without an evidentiary hearing. The Magistrate Judge recommended that this argument be dismissed because Petitioner's argument appears to be that the state court violated its own law in denying the motion for appropriate relief without an evidentiary hearing, and that this violated Petitioner's federal due process rights. (Rec. of United States Magistrate Judge at 10). The Magistrate Judge also noted that Petitioner's argument that the state court failed to follow its own law was not a viable federal habeas claim. *Wright*, 151 F.3d at 159, (Id.).

In his objection, Petitioner argues that the failure to provide an evidentiary hearing is a violation of his due process rights. However, Petitioner fails to show that a denial of an evidentiary hearing was a violation of federal due process. The state court held that there was no need for an evidentiary hearing because the issue could be resolved without a hearing and, as was just discussed, federal habeas corpus is not an appropriate vehicle to address claims that a state has, in some way, failed to provide an adequate post conviction procedure. *Murray*, 492 U.S. at 7, 109 S.Ct. at 2769.

### C.

Third, Petitioner claims a violation of due process because the Superior Court denied his motion to amend the MAR after it had been remanded by the North Carolina Supreme Court in order for the Superior Court to state its reasons for the original denial. Petitioner wished to add claims that he had been denied effective assistance of counsel in three ways: (1) that trial and direct appeal counsel failed to offer evidence that someone else had sexually abused the victim; (2) that trial counsel failed to request presentation to the jury of additional mitigating factors; and, (3) that trial counsel failed to request that the jury be instructed on involuntary intoxication.

The order of remand, in substantive entirety, read:

"Defendant's Petition for Writ of Certiorari is allowed for the limited purpose of remanding this case to the Superior Court, Randolph County, for reconsideration of defendant's Motion for Appropriate Relief in light of this Court's opinion in *State v. McHone*, 348 N.C. 254, 499 S.E.2d 761 (1998); in all other respects, the petition is denied."

Holding that the remand was, by its terms, for a limited purpose and relying also upon on N.C.G.S. § 1419(a)(1) and (3) [4], the Superior Court denied the motion to amend.

Petitioner's contention raises several questions: whether the state court violated Petitioner's federal due process rights by not allowing an amendment, whether trial counsel was ineffective by not pursuing any of the three courses identified by Peti-

---

4. NCGS § 15A–1419 provides in pertinent part:

    (a) The following are grounds for the denial of a motion for appropriate relief, including motions filed in capital cases:

    (1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.

This subdivision does not apply when the previous motion was made within 10 days after entry of judgment or the previous motion was made during the pendency of the direct appeal.

    (3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.

tioner, and whether the claims have been procedurally defaulted by Petitioner's not having raised them either on direct appeal or in the original MAR.

■ The answer to the first question is that since a state is not constitutionally required to afford post conviction process following completion of the direct appeal, it could not be a violation of federal due process for the state not to allow an amendment to a post conviction motion even if the denial would be a violation of state law requirements.

■ The answer regarding procedural default is more elusive. "A federal habeas court may not review a claim when a state court has declined to consider its merits on the basis of an independent and adequate state procedural rule." *Bacon v. Lee*, 225 F.3d 470, 476 (4th Cir.2000). A state procedural rule is adequate if it is one that is regularly and consistently applied by the state court. It is independent if it does not depend on a federal constitutional ruling. *Id.* at 476. There is no question here that the state ruling was independent or that, in slightly different contexts, § 15A–1491(a)(1) and (3) have each been held adequate; the question is whether either § 15A–1491(a)(1) or (3) has been applied regularly and consistently to facts analogous to those in this case. *Id.* at 476. Insofar as subsection (3)—not having been raised on direct appeal—is concerned, direct appeal counsel and trial counsel were the same. In that setting, ineffective assistance at trial is not a claim that the North Carolina courts have required to be pursued on direct appeal. Insofar as subsection (1)—that a "previous" MAR had been filed and the issues not raised—is concerned, neither party has provided authority and this Court has found none regarding whether an MAR still pending upon remand for a limited purpose has been considered "previous" and, therefore,

not subject to amendment. Without such prior determination, it is difficult to classify the application here as "regular". Therefore, because it is concluded that the claims Petitioner would have added have no merit, they will be addressed substantively rather than on grounds of procedural default. *Id.* at 477.

Again, Petitioner wished to amend his MAR to add the claim that he was denied effective assistance of counsel in three ways: (1) trial counsel and direct appeal counsel failed to offer evidence that someone else sexually abused the victim; (2) trial counsel failed to request that additional mitigating factors be presented to the jury; and (3) trial counsel failed to request that the jury be instructed on involuntary intoxication.

In order to establish ineffective assistance of counsel Petitioner must demonstrate that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and outside the large range of professionally competent assistance and (2) that the performance prejudiced the defense in that but for counsel's unprofessional conduct the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential" as so not to second guess the performance. *Id.* at 689, 104 S.Ct. 2052. In addition, to avoid the distortion of hindsight, the counsel's performance must be evaluated from the counsel's perspective at the time. *Id.*

■ Petitioner argued that his counsel erred by not presenting evidence that someone else other than Petitioner sexually assaulted Natalie. The Magistrate Judge observed that the only evidence that someone else could have assaulted Natalie

consists of evidence arising two years prior to Natalie's death when it was alleged her father may have had sexual contact with her. (Rec. of United States Magistrate Judge at 13–14). In his objection, Petitioner argues that a Randolph County grand jury found there was an indication of sexual contact by the father within six months of Natalie's death when Natalie had said her father "kissed her pee-pee". Even if the Magistrate Judge's observation is factually wrong with regard to time, Petitioner's argument ignores the evidence presented by the pathologist. The pathologist testified that the sexual abuse occurred at the time of Natalie's death and Petitioner was the only person present at that time. Petitioner was with Natalie all that day.

The evidence was offered in the guilt-innocence phase of the trial and rejected by the trial court. The ruling was upheld by the North Carolina Supreme Court which found it "too temporally remote to be relevant to this offense" because "[a]ll of the evidence indicates that the injuries to Natalie's vagina were recent in relation to the time of her death." *State v. Kandies*, 342 N.C. at 442, 467 S.E.2d at 79. The pathologist had found Natalie's vagina full of blood and described a laceration on the back wall of the vagina caused by blunt force indicative of forced intercourse. Because of the blood and lack of healing and because the opening of the vagina was patulous, he testified that the injuries were sustained about the time of death. Since the evidence had already been held inadmissible on the ground of relevancy, trial counsel did not err by failing to offer it during the sentencing phase.

■ Petitioner also argued he was provided ineffective assistance of counsel because his counsel failed to request additional mitigating factors for the jury. The mitigating factors that Petitioner argued

his counsel should have presented are: (1) testimony from Ms. Dempsey that Natalie considered Petitioner a father figure; (2) evidence from Peggy McBride who stated that, even though she did not know Petitioner well, she did not think that Petitioner was capable of committing the act; and (3) evidence of the non-statutory mitigating factor that Petitioner had served in the military.

■ When a defendant challenges a death sentence the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Fisher v. Lee*, 215 F.3d 438, 446–7 (4th Cir.2000). Neither the Supreme Court nor the Fourth Circuit has held that it is *per se* ineffective assistance of counsel not to introduce mitigating evidence. *Hunt v. Lee*, 291 F.3d 284 (4th Cir.2002). Counsel necessarily makes strategic decisions as to which factors to submit to the jury. The Magistrate Judge observed that the evidence regarding Natalie's view of Petitioner as a father figure could have been viewed as an aggravating factor because of the way Petitioner abused the trust. (Rec. of United States Magistrate Judge at 16). The Magistrate Judge also observed that the evidence from Ms. McBride lacked substance, and Petitioner's military record was not spotless. (Id.) All of the evidence could have been used by the jury against Petitioner, and it was objectively reasonable not to submit it to the jury. Therefore, trial counsel's election not to submit the evidence as mitigating factors was not ineffective assistance of counsel.

■ The final issue that Petitioner raised was that counsel failed to request that the jury be instructed on voluntary intoxication. Mere intoxication is not sufficient to show that Petitioner was utterly

incapable of forming a deliberate and premeditated intent to kill. *State v. Brown*, 335 N.C. 477, 439 S.E.2d 589 (1994). The Magistrate Judge observed that the only evidence that Petitioner advanced is that Petitioner was drinking on the night of the incident. (Rec. of United States Magistrate Judge at 16). Petitioner fails to point out any evidence to indicate intoxication sufficient to warrant an intoxication instruction. An attorney is not required to submit a futile argument to the court. *Fisher*, 215 F.3d at 451.

Therefore, the Magistrate Judge's recommendation is correct; Petitioner's claims are without merit.

## D.

Fourth, Petitioner claimed that his right to a fair and impartial jury was denied when juror Mr. Mayberry was not excused for cause. Petitioner objects to the Magistrate Judge's recommendation that this claim be dismissed. Petitioner alleged that the trial court refused to excuse Mr. Mayberry for cause even though he consistently stated that his views would prevent him from considering life imprisonment upon conviction. The North Carolina Supreme Court, after reviewing the transcript, held that Petitioner failed to establish that Mr. Mayberry's views would substantially impair his performance. Petitioner initially challenged Mr. Mayberry on his statement that he did not think that life imprisonment for first degree murder was fair to the general public.

However, the prosecutor continued to question Mr. Mayberry in voir dire and told Mr. Mayberry that a juror had to consider both penalties at sentencing and weigh whether the State carried its burden as to each element of the case. The prosecutor further explained that a juror who would automatically vote to impose death could not carry out his duty as a juror.

The trial court then asked Mr. Mayberry if he could follow the law and require the state to meet its burden of proof. Mr. Mayberry responded that he understood the law and guessed that he would have to obey it. The trial court further asked if Mr. Mayberry would follow its instructions. Mr. Mayberry responded that he guessed he would have to obey the court's instructions. The defense counsel also questioned Mr. Mayberry, who again stated that he would consider the law as instructed by the trial court.

The North Carolina Supreme Court found no violation in the seating because Mr. Mayberry stated he could set aside his feelings concerning the death penalty and follow the law as instructed by the court. *Kandies*, 342 N.C. at 438, 467 S.E.2d at 77

The standard for determining whether a prospective juror may properly be excused for cause for his views on capital punishment is whether those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Moreover, it has been established that where the prospective juror's response, as captured in the transcripts, reflects some ambiguity in the state of mind of the juror, then the determination made by the trial court, based on its eyeing the juror, is presumed to be consistent with the applicable standard. *See Briley v. Bass*, 750 F.2d 1238, 1246–47 (4th Cir.1984)

The Magistrate Judge observed that, although there was evidence that Mr. Mayberry needed a lot of explanation to understand the law, there is no evidence that he was unable to follow the law. (Rec. of United States Magistrate Judge at 21–22). In addition, the Magistrate Judge observed that Petitioner still had the abili-

ty to use a peremptory challenge to excuse Mr. Mayberry. (Rec. of United States Magistrate Judge at 22). Moreover, the state court trial judge was able to review the entire situation including body language and voice intonation that are not available through a cold record. Petitioner fails to show that the state court decision was contrary to or an unreasonable application of federal law. Therefore, the Magistrate Judge's recommendation is correct.

## IV.

For the reasons set forth above, the Recommendation of United States Magistrate Judge to deny the Petition for Writ of Habeas Corpus [Doc. # 20] is ADOPTED and the Petition is DENIED.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ELIASON, United States Magistrate Judge.

Petitioner seeks relief in this Court pursuant to 28 U.S.C. § 2254. He was convicted by the State of North Carolina for first-degree murder and the first-degree rape of Natalie Lynn Osborne, who was the four-year-old daughter of petitioner's then, fiancee. The mother, Patricia Craven, also has two sons, the youngest of whom is evidently petitioner's. Craven and petitioner had separate residences approximately ten miles away from each other. Petitioner lived in Randleman, North Carolina, and Craven stayed at an apartment in Asheboro, North Carolina.

The facts in this case were set out by the North Carolina Supreme Court in its decision in *State v. Kandies*, 342 N.C. 419, 430–433, 467 S.E.2d 67, *cert. denied*, 519 U.S. 894, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996). To summarize, petitioner was with Natalie on Easter Monday, April 20, 1992.

Both Craven and petitioner were with Natalie until some time between 4:00 and 4:30 p.m. Then petitioner left to go to the store and did not return until 7:30 p.m. Natalie could not be found and petitioner reported her missing. An extensive search was conducted.

Meanwhile, and earlier that evening, petitioner was in a convenience store and his hand was beginning to swell. He claimed he got into a fight with his brother. Later that evening, and close to midnight, petitioner returned to the store to see if the clerk had seen Natalie. At that time, the clerk observed black garbage bags in the back of petitioner's truck.

The next day, the police thought that perhaps Craven and petitioner had hidden Natalie at petitioner's Randleman residence in order to deny the father access. A search of the house did not locate Natalie. On Wednesday, April 22, 1992, petitioner was questioned at the police station. He was taken to Craven's residence around 1:00 a.m. When he arrived, Craven asked petitioner if he knew what had happened to Natalie and petitioner volunteered that he had hit Natalie with the truck on Easter Monday and panicked because he had been drinking. Therefore, he claimed to have taken Natalie to his house to clean her up. He stated that Natalie did not look right, so he concealed her and her clothes in a garbage bag which was put into a bedroom closet.

As a result of this story, petitioner returned to the police station and gave a more detailed statement. His residence was voluntarily searched and Natalie's body was found buried under a pile of clothes and carpet pieces in a bedroom closet. Natalie's bloody playsuit and bloody pair of panties were both turned inside out and found in the bag. A forensic pathologist testified to blunt force inju-

ries on the head, neck, skull, back and both sides. These bruises were small and rounded and had a distribution in the shape suggestive of an adult hand. Natalie's pelvic region was injured with bruising on both sides of the vagina which was full of blood. The pathologist opined that the injuries were indicative of sexual assault and had occurred at or about the time of death.

That evening, which would have been Thursday, April 23, 1992, and after the results of the autopsy were revealed, a police officer interrogated petitioner and mentioned the possibility of sexual assault. Petitioner's response was that he had already told Craven that the officers would say that he had done something like that to Natalie. Thereafter, petitioner denied sexually abusing Natalie. However, he admitted that he took Natalie to his house, put her into the bathtub, and took off her clothing in order to see how badly she was injured. Petitioner then stated he could not handle the situation and may have strangled Natalie. Blood was found at numerous places in petitioner's residence and in his truck.

Understandably, petitioner presented no evidence during the guilt-innocent phase of the trial. The jury found petitioner guilty of first-degree murder on both a felony murder rule and premeditation and deliberation premise, and also found him guilty of first-degree rape. During the sentencing phase, he presented evidence from a clinical psychologist as an expert in substance abuse treatment who spoke about petitioner's alleged use of alcohol and marijuana on a daily basis for several years. The psychologist opined that petitioner had severe alcohol dependence on the day of the offense and was suffering from acute intoxication which may have affected his judgment and ability to control his emotions. That doctor also opined that petitioner had a mental disorder and did not appreciate the criminality of his actions. The jury found aggravating circumstances on the grounds that petitioner committed the act during the commission of first-degree rape and further, that the murder was especially heinous, atrocious or cruel. If further found three of the five proposed statutory mitigating circumstances and eighteen of the twenty-eight non-statutory mitigating circumstances submitted. Accordingly, it unanimously recommended a sentence of death, which the trial court imposed.

Petitioner appealed his conviction which was affirmed by the North Carolina Supreme Court in *State v. Kandies, supra.* Petitioner then filed a motion for appropriate relief in state court in September 1997. There, he contended that (1) his Sixth Amendment right to effective assistance of counsel was denied because counsel was not qualified to try a capital case, (2) counsel was ineffective for failing to conduct an adequate investigation to uncover evidence that petitioner had been sexually molested as a young child and to offer such evidence in mitigation, and (3) the evidence that petitioner committed rape was insufficient. The superior court denied relief. (Immediately prior to the court's decision, counsel for petitioner had requested to be relieved of representation, which was granted.) In the Petition for Certiorari to the North Carolina Supreme Court, petitioner raised the additional issue that the superior court should not have decided the motion without affording a new attorney the right to submit additional briefing and further, that the superior court erred by not affording petitioner an evidentiary hearing.

The North Carolina Supreme Court remanded the matter back to the superior court for reconsideration of petitioner's motion for appropriate relief in light of

that court's opinion in *State v. McHone,* 348 N.C. 254, 499 S.E.2d 761 (1998). In *McHone,* the court found, after reviewing N.C.G.S. § 15A–1420(c), that a state post-conviction court must make written conclusions of law and reasons before denying a post-conviction motion alleging a violation of constitutional rights. *McHone* further found that if a post-conviction motion merely alleges questions of law or if the supporting information to the motion would not affect the legal conclusion, then the motion can be denied without hearing, even if facts are in dispute. In petitioner's case, the court rejected a contention that a state defendant is entitled to a post-conviction evidentiary hearing merely because he asserts there is a conflict of facts relating to constitutional issues. However, it required the state post-conviction court to specifically find whether an evidentiary hearing is required to resolve facts or not.[1]

Thereafter, and on November 30, 1998, petitioner filed an amended motion for appropriate relief which attempted to raise additional arguments, as follows: (1) counsel was ineffective for failing to offer evidence that someone else other than petitioner had sexually abused Natalie, (2) counsel was ineffective for failing to request the trial court to submit additional non-statutory mitigating factors, and (3) that counsel was ineffective for failing to request that the jury be instructed in accordance with the law of voluntary intoxication.

On April 29, 1999, the state post-conviction court determined that there was no need to conduct an evidentiary hearing because there was no evidentiary dispute

about a "dispositive fact" which would necessitate a hearing. It found that merely because there were factual disputes, this was not sufficient to require a state court hearing. It also denied petitioner's amended motion for appropriate relief, finding that the amendment was not authorized by the order of remand from the North Carolina Supreme Court and was an attempt to raise additional allegations which should have been raised in petitioner's original motion for appropriate relief filed May 8, 1997. Therefore, it refused to consider the additional grounds for relief, and it additionally found them to be procedurally barred in accordance with N.C.G.S. § 15A–1419. Further relief was denied.

In this Court, petitioner raises fourteen grounds for relief.[2] Before turning to them, it is appropriate to point out the standard of review. First, this Court is required to give deference to state court adjudications as required by 28 U.S.C. § 2254(d). A federal court reviews the state court's adjudication only to determine whether it is contrary to established federal law or whether it involved an unreasonable application of federal law. *Fisher v. Lee,* 215 F.3d 438, 447 (4th Cir. 2000). A decision is contrary to federal law if the state court comes to a conclusion opposite that reached by the Supreme Court or if the state court decides a case differently then the Supreme Court has when the facts are materially indistinguishable. A state court decision is an unreasonable application when the state court has identified the correct governing legal principle but applies that principle

---

1. In *McHone,* the North Carolina Supreme Court found that the post-conviction court did not make the required finding concerning the need for an evidentiary hearing. There, the disputed issue of fact was whether the State had submitted a proposed order to the trial court, but had not provided the defendant or

his counsel with a copy. If so, this would have been an improper *ex parte* contact.

2. Petitioner confuses the situation by failing to key the claims to the brief which argues eighteen "claims."

unreasonably to the facts of the case in front of it. Also, with respect to state court factual findings, there is a presumption of correctness that can be rebutted only by clear and convincing evidence. *Evans v. Smith,* 220 F.3d 306, 311–312 (4th Cir.2000).

Petitioner's first claim is that the state court violated his rights to "fundamental fairness" by addressing his motion for appropriate relief despite concluding that he was represented by counsel with a conflict of interest. For facts, petitioner states that on February 9, 1998, his post-conviction counsel filed a motion to withdraw, alleging a clear and unavoidable conflict of interest. Petitioner states that the state court allowed the motion to withdraw but then failed to appoint conflict free counsel in a timely manner and instead, merely ruled upon the motion for appropriate relief filed by petitioner's counsel.

Petitioner cites the Supreme Court's decision in *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), for authority for the proposition that the same due process rights which pertain to the trial and direct appeal, also apply to post-conviction proceedings. However, that case involved clemency proceedings and not post-conviction proceedings. More importantly, the Supreme Court in *Woodard* did not find any due process right with respect to clemency proceedings. Indeed, the Supreme Court went on to note that there is no continuum of due process rights occurring from trial through post-conviction proceedings. *Id.* 523 U.S. at 284, 118 S.Ct. 1244. Petitioner, apparently seeks to rely on fragments from the concurring opinions to establish a new rule of law. *Woodard* does not establish such a right. Rather, the established law is that claims of error occurring in state post-conviction proceedings cannot serve as a basis for federal

habeas corpus relief. *Bryant v. State of Maryland,* 848 F.2d 492 (4th Cir.1988); *Kenley v. Bowersox,* 228 F.3d 934 (8th Cir.2000). The relevant Supreme Court authority is *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), which found there was no Sixth Amendment or Fourteenth Amendment Due Process or Equal Protection right to counsel in post-conviction proceedings, and even if state law allows for appointed counsel, the full panoply of due process rights do not apply to post-conviction proceedings. *See Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989)(no constitutional right to counsel for capital post-conviction proceedings).

In addition, even if there were such a due process right to counsel and conflict free counsel in a post-conviction proceeding, petitioner fails to show that he, in fact, suffered an actual injury because of a genuine conflict of interest. A review of the record before the superior court at that time indicates that by a February 3, 1998 letter to the court, counsel expressed concern because petitioner's mother was making allegations that counsel conspired with the State against petitioner and filed lawsuits against the attorneys. Counsel labeled the allegations as farfetched, but seemed to think that these created a conflict of interest. Petitioner's mother was apparently attempting to act as his attorney and attempted to get a power of attorney from him. Counsel met with petitioner, who apparently adopted the mother's filings and stated that he no longer wished counsel to represent him. The state post-conviction court then entered an order denying post-conviction relief and at the same time, entered an order relieving counsel from further representation. The order relieving counsel from further representation was expressly based on the fact that petitioner's mother had attempted on two occasions to bring civil actions against

the attorneys. There was no finding of any actual conflict of interest. Instead, as respondent argues, it appears that petitioner and his mother were attempting to disrupt the court process by their antics and that the state court simply ruled on the petition and then relieved counsel from further representation. There was, in fact, no finding that there was any conflict of interest and it appears that the state court simply decided to give petitioner new counsel for further proceedings in the court. Therefore, petitioner's first claim for relief should be dismissed for both failing to state a justiciable claim and also for being without merit.

The second claim makes the allegation that the State violated petitioner's right to fundamental fairness when it denied his motion for appropriate relief without an evidentiary hearing. The contention appears to be that the state court violated its own law and procedures by the ruling and that this, in turn, violated petitioner's federal due process rights. For facts, petitioner states that the petition raised claims which would have entitled him to relief if resolved in his favor. Again, this type of issue fails to state a claim for federal relief as noted earlier. Petitioner is apparently attempting to again base his challenge on purported errors arising in the state post-conviction proceedings, which he cannot do.

In his petition, petitioner fails to specify which issues of fact required an evidentiary hearing. In his brief, petitioner claims that he should have been given a chance to present evidence that trial counsel was ineffective for failing to have discovered that he had been sexually molested as a child. Petitioner apparently states that in accordance with *State v. McHone, supra,* the superior court was required to hold an evidentiary hearing. To the extent petitioner argues that the state failed to follow its own rules, that argument is not a viable federal post-conviction claim. This claim is premised on an interpretation of North Carolina law and, therefore, it is not cognizable in federal habeas corpus review. *Wright v. Angelone,* 151 F.3d 151, 157 (4th Cir.1998). Furthermore, there is not a credible showing that the state court misapplied state law. The state court found that even though there may have been factual disputes, they need not be resolved in order to decide the issue. *See McHone, supra;* and, *see, e.g., Thomas v. Taylor,* 170 F.3d 466 (4th Cir.), *cert. denied,* 527 U.S. 1016, 119 S.Ct. 2361, 144 L.Ed.2d 254 (1999). The state court simply found no need for a hearing. Therefore, even if petitioner had a constitutional right in the abstract to a hearing under North Carolina law, he fails to show that his federal constitutional rights were violated or that under the facts of his case, the state misapplied state law.

The third claim for relief alleges that petitioner was denied fundamental fairness under the Due Process Clause when the state court summarily dismissed his amended motion for appropriate relief. This claim, again, appears to be based on his argument that the Due Process Clause of the United States Constitution requires federal courts to enforce state rules in post-conviction relief proceedings. Petitioner wants this Court to rule that N.C.G.S. § 15A–1415(g) requires the state court to allow a defendant to file as many amendments to a motion for appropriate relief prior to the entry of an order. Petitioner also apparently argues that this is a requirement of the North Carolina Supreme Court by virtue of its decision in *State v. McHone, supra.*

Again, petitioner fails to show that such a federal constitutional right exists. Second, even if petitioner had a right in federal habeas corpus to have a federal court

interpret and enforce state rules and procedures, there is nothing in the state statute or state court decision which would require the result contended by petitioner. The fact that the state courts dismissed petitioner's request for relief would indicate that, in any event, petitioner is incorrect in his purported interpretations of state law. In all events, he is not entitled to federal habeas corpus relief on this issue.

Petitioner's fourth ground for relief alleges that he was denied his right to effective assistance of counsel. For facts, he states that trial counsel failed to investigate petitioner's childhood sexual abuse and to present that fact in mitigation. He further states that both trial counsel and direct appeal counsel failed to offer evidence that someone else sexually abused the victim, that counsel failed to request additional mitigating factors for the jury instruction, and did not request that the jury be instructed on voluntary intoxication. Finally, he contends counsel erred in abandoning a claim that his statement to police should have been suppressed.

These claims were raised in petitioner's amended post-conviction relief petition filed after the case was remanded by the North Carolina Supreme Court. The superior court refused to permit the amendment. It stated that the case was remanded by the North Carolina Supreme Court for a very limited purpose to review the Court's prior decision in light of *State v. McHone, supra.* Consequently, the Court treated the amended motion as a second motion for appropriate relief which was barred by N.C.G.S. § 15A–1419. This is an independent and adequate state ground for finding that a claim has been procedurally defaulted. *See Fisher v. Lee,* 215 F.3d at 456. The State, in fact, raises procedural bar contained in N.C.G.S. § 15A–1419(a)(1) & (3). Therefore, the claim

should be denied for being defaulted. Respondent also addresses the merits and indicates that the attorney cannot be blamed when neither petitioner, his mother, nor the clinical psychologist ever informed the attorney of his purportedly being abused. And, it should be noted that petitioner himself, in his brief at p. 20, fails to even present a vague argument as to why the attorney should be responsible for discovering matters of which petitioner was well aware, and could not be discovered by a trained psychologist.

Respondent further argues that the contention that counsel erred by not offering evidence that someone other than petitioner sexually assaulted Natalie is wholly without merit. The Court agrees. Petitioner does address this issue in his brief. However the evidence which would have been offered merely consists of evidence arising two years prior to the incident, wherein there is indication that Natalie's father may have had sexual contact with her. However, this argument fails to recognize the fact that the pathologist in this case found that the sexual contact came at the time of Natalie's death, which would rule out the father, inasmuch as Natalie was with petitioner *at all relevant times* prior to and during the time of her death.

The next matter under issue number four is the procedurally barred assertion that counsel failed to request additional mitigating factors for the jury's consideration. One factor would be testimony from a Ms. Dempsey that Natalie considered petitioner to be a father figure. The second bit of evidence would be evidence from a Peggy McBride, who did not know petitioner well, but who would have made the gratuitous comment that she did not think that petitioner was capable of committing the act which he did. Petitioner also claims that counsel erred by not requesting petitioner's military service be

submitted as a non-statutory mitigating factor. (However, as petitioner admits, his military service record also indicated misdemeanor arrests.) None of this constituted error.

An ineffective assistance of counsel claim is evaluated by using a two-part test:

> In order to establish an ineffective assistance of counsel claim ... [a petitioner is] required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052, 80 L.Ed.2d 674. And, "[w]hen a defendant challenges a death sentence ..., the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.*

*Fisher v. Lee*, 215 F.3d at 446–447. In the case of a guilty plea, petitioner may also have to explain why, without counsel's alleged shortcomings, he or she would have pled not guilty and insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Counsel necessarily makes a strategic decision concerning which factors to submit for the jury's consideration. Evidence that Natalie considered petitioner to be a father figure, in fact, may have been seen by the jury to be an aggravating factor since he so horribly abused that trust. The evidence of Peggy McBride's opinion lacked substance. Likewise with the military service, petitioner did not have a spotless military record and it may have been as well not to try to remind the jury of that fact. Certainly, these factors would

not have justified a finding of ineffective assistance of counsel even if the matter were properly before the Court.

The next issue, which petitioner raises from his procedurally barred amended motion for appropriate relief, is that counsel failed to request that the jury be instructed on voluntary intoxication. Counsel fails to argue this matter in the brief and the petition itself fails to disclose any fact which would indicate that petitioner's constitutional rights were violated. Respondent, in fact, shows that an instruction on voluntary intoxication was not required, *citing State v. Brown*, 335 N.C. 477, 439 S.E.2d 589 (1994). *Brown* indicates that mere intoxication is not sufficient to show that petitioner was utterly incapable of forming a deliberate and premeditated intent to kill. In the amended motion for appropriate relief, the only facts which petitioner advances are that petitioner was drinking at the time he committed the murder, but utterly fails to point to any evidence which would indicate intoxication sufficient to warrant an involuntary intoxication instruction. *See Fisher v. Lee*, 215 F.3d at 451. Counsel is not required to perform futile acts.

The last claim, arising from his defaulted state motion for appropriate relief, is that counsel on appeal erred by abandoning his motion to suppress his statements. This claim is apparently based on the idea that officers had no probable cause to arrest him after he had previously led them to believe that Natalie ran away or was kidnaped, but then after a few days admitted he killed her, but claimed it was an accident. From this, he concludes that any post-arrest statement must be suppressed. The mere recitation of the facts reveals probable cause for arrest and, therefore, demonstrates that the claim lacks merit. Therefore, any statements made after his arrest were not "illegally seized." An attorney need not raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Consequently, counsel need not raise frivolous or marginal issues such as this one. Petitioner fails to show substantial merit to this issue and fails the reasonableness prong of the test. Second, he fails to show prejudice. The claim should be dismissed.

In conclusion, the issues raised in ground four are procedurally barred and defaulted under state law and should be dismissed here on that ground. Also, the claims are without merit.

■ The remaining matters raised by petitioner in this Court were all decided by the North Carolina Supreme Court. For ground five, petitioner claims that the State violated his rights by exercising peremptory challenges to exclude jurors solely by reason of their race. For facts, petitioner claims that the State excused fifteen jurors via peremptory challenges and that nine of these were black. Petitioner is white, as was the victim. The North Carolina Supreme Court specifically addressed this issue, considered the *Batson* factors and found that here, the victim was white, defendant was white, several witnesses were white, and that this was not a case where race was involved. Moreover, it noted that the prosecutor accepted three black jurors when he had peremptory challenges remaining. Thus, there is no indication that this was a case which would give any suspicion that race would be a motive behind the exercise of peremptory challenges.

In any event, there was a specific record concerning the challenges because petitioner made a *Batson* challenge. The prosecutor made a challenge with respect to three potential jurors, but the prosecutor gave specific reasons for dismissal of them. These reasons were that one was

hesitant on the death penalty and this juror also had been convicted of worthless checks and two speeding violations. Another juror worked with three- and four-year-old children and was hesitant on the death penalty issue. The third juror was hard of hearing and had difficulty understanding questions. Petitioner did not show any factors to counteract the explanations given by the prosecutor.

In the second *Batson* challenge, the North Carolina Supreme Court found that the prosecutor dismissed two jurors because a source within the High Point Police Department indicated they were weak on the death penalty and in addition, a court officer noted that one of the prospective jurors was nodding off at least twice during the *voir dire*. The record shows that the trial court noted that after giving this explanation, the prosecutor passed a minority juror called as a replacement. The court and found that the reasons enunciated by the prosecutor were valid.

Petitioner raised a subsequent *Batson* challenge when the State excused three more black jurors, one because he stated he did not believe in the death penalty and may well have had a prior common law robbery conviction. A second juror was dismissed because he was worried about his employment and loss of income, never thought about the death penalty, and denied convictions even though state records showed that he had prior convictions for driving while impaired and driving while license revoked. The last juror was excused because it appeared he had a record of reckless driving, driving while impaired, worthless checks, injury to property convictions, and simple assault by pointing a gun. The state supreme court found those all to be valid reasons and that the trial court did not err in so concluding. The final challenge was with respect to a prospective alternate juror. The prosecutor

explained that this juror had trouble hearing as evidenced by her failure to heed the court's instruction about not watching television or listening to radio broadcasts concerning the case.

Under *Batson,* once a defendant has demonstrated a *prima facie* case of discrimination, the prosecutor must give clear and reasonable explanation for the reasons in exercising the challenge. This explanation, however, need not justify an exercise for challenge for cause, nor necessarily be persuasive or plausible. The reason need not necessarily make sense, so long as there is nothing inherent which would disclose discriminatory intent. *Evans v. Smith,* 220 F.3d at 312–13. Finally, the defendant, at all times, bears the ultimate burden of persuasion as to the existence of purposeful discrimination. *Id.* The North Carolina Supreme Court applied this law. The recitation of the facts, as noted above, makes it clear that the North Carolina Supreme Court's finding of no *Batson* violation is not clearly contrary to, nor an unreasonable application of, Supreme Court law and precedent. Petitioner failed to meet his burden of proof.

For his sixth claim of error, petitioner contends that his rights to due process, equal protection, and an impartial jury was denied because the State failed to produce criminal records of prospective jurors. Petitioner fails to cite any Supreme Court case which would justify this contention. The state court discusses this as a matter of state law and not federal law. There is no indication whatsoever that petitioner raised a federal claim in regard to this matter. Therefore, this ground for relief should be denied for being without merit.

In his seventh ground for relief, petitioner claims that his right to a fair and impartial jury was denied when a Mr. Mayberry was challenged for cause. For facts, petitioner states that Mr. Mayberry consis-

tently said his views would prevent him from considering life imprisonment as a punishment upon conviction, yet the trial court allegedly refused to remove Mr. Mayberry from the jury for cause. The North Carolina Supreme Court considered this issue and held that upon a reading of the transcript, petitioner failed to establish that Mr. Mayberry's views on capital punishment would substantially impair his performance. It noted that petitioner initially challenged Mayberry based on his response that life imprisonment was not fair to the general public for someone convicted of first-degree murder. However, the prosecutor was then allowed to continue to question Mr. Mayberry. The court itself then conducted a *voir dire* and told Mr. Mayberry that a juror had to consider both penalties at sentencing and weigh whether the State carried its burden on each of the three issues and, therefore, someone who would automatically vote to impose the death penalty could not carry out his duty as a juror. The court then asked Mr. Mayberry whether he could follow the law and require the State to meet its burden of proof. Mr. Mayberry then stated that he now understood the law and guessed that he would have to obey it and, when specifically asked whether he would abide by the court's instructions, he stated he guessed that he would have to. Thereafter, defense counsel questioned Mayberry and he restated that he would consider the law as instructed by the trial court.

The North Carolina Supreme Court found that because Mayberry stated that he could set aside his feeling concerning the death penalty and follow the law as given by the court that, therefore, he should not be excused as a matter of state law. In his brief, petitioner fails to show how the state court's decision was contrary to, or an unreasonable application of, United States Supreme Court Law. The North Carolina Supreme Court's opinion appears to follow the law explicitly. It does appear that Mr. Mayberry required a "lot of explaining" in order to understand the system. Yet, there is no evidence that Mr. Mayberry would not be able to follow the law. It must be remembered that this Court is only reviewing a cold record devoid of voice intonation and other nuances that are only available to the trial judge. To the extent petitioner still questioned Mr. Mayberry's ability to follow the law, he could have exercised a peremptory challenge as to Mr. Mayberry, inasmuch as that is the purpose of such challenges. The record does not show that the North Carolina Supreme Court's decision was unreasonable or contrary to law. Therefore, petitioner's seventh ground for relief is without merit.

In ground eight, petitioner claims that the State denied him the right to explore the death penalty issue during *voir dire*. For facts, petitioner states that the trial court continuously sustained the State's objections to questions posed by petitioner's counsel to explore the prospective jurors' views on the death penalty and the age of the victim.

In the state court, this issue was confined to jurors Mayberry and Peterson. The North Carolina Supreme Court cited examples of petitioner's questions, which asked the jurors what feelings or life experiences that they had which would make them feel strongly for the death penalty, whether the juror thought petitioner should prove why he should be given life imprisonment rather than the death penalty, and whether the age of the victim would make a difference in imposing a life sentence or death, etc. Petitioner argued that he was required to ask these questions in order to open up the foundation for a challenge for cause against these jurors, *citing Morgan v. Illinois,* 504 U.S.

719, 733, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

*Morgan* requires a trial court to ferret out individuals who would not follow the law and instead would simply vote to impose the death penalty. The North Carolina Supreme Court found that it was not proper for petitioner to ask potential jurors if they would impose the death penalty under the particular facts and circumstances of the case. What the court found was that the questions were an improper attempt to stake out jurors to determine the kind of verdict the jurors would render given a certain set of circumstances. Nothing in *Morgan* indicates that defense counsel can ask the kind of questions which were presented here. In fact, it is quite clear by the trial court's examination of Mayberry, what would be the more proper procedure. Petitioner, however, wanted to go beyond those questions. He wanted to have the jurors give an opinion on how they would vote considering the particular circumstances of the case, without having ever been told what their legal obligations were as jurors. Petitioner also wanted to make an inquiry as to the degree of difficulty a juror would have in making a decision, again before the juror was informed of his or her obligations. *Morgan* does not give him a right to do so. The North Carolina Supreme Court further noted that even with respect to questions concerning the jurors' exposure or relationship to children, in each instance the prospective juror answered before the objection was made or had answered a similar question previously, or else an objection was made as to form and defense counsel was allowed to restate the question. Therefore, that court found that petitioner failed to show any abuse of discretion by the trial court. A review of the North Carolina Supreme Court's decision on this issue fails to show that it was contrary to, or an unreasonable application of, federal law.

In ground nine, petitioner alleges that his Fifth, Sixth and Fourteenth Amendment rights were denied by the State because it failed to provide information to him. For supporting facts, he states that the trial court permitted FBI Agent Durdack [correct spelling "Dyrdak"] to testify to the substance of an interview with petitioner when petitioner was not provided the substance of these statements in discovery. Petitioner fails to cite any Supreme Court precedent governing this issue. A review of the state court decision shows that the issue was decided under state law. Therefore, petitioner has failed to allege a meaningful violation of his constitutional rights.

In addition, the North Carolina Supreme Court found no error, even under state law. That court found that the State wanted to use Dyrdak for the purpose of showing that petitioner's explanation about accidently hitting Natalie with the truck originated from an interviewing technique the agent employed when he (the agent) suggested this version of events to petitioner in order to elicit a response from him. The defense attorney objected that the entire line of testimony, in regard to petitioner's truck explanation, originated from the oral statements petitioner made to Dyrdak. When the State failed to disclose the substance of the statements made to Dyrdak, petitioner argued that the state thereby violated the trial court's discovery order. Petitioner contended that all of petitioner's statements should be suppressed as a discovery sanction. The trial court denied the request. It found that Dyrdak obtained the information concerning petitioner owning a truck from other police officers and not from petitioner himself. As a consequence, Dyrdak did not make his comments to petitioner based

on information he obtained from petitioner. As a result, the trial court found that the State did not violate the discovery order by not turning over the substance of the Dyrdak scenario to petitioner. On appeal, petitioner merely argued that the trial court abused its discretion. The North Carolina Supreme Court found otherwise.

■ For ground ten, petitioner alleges a violation of his rights under the Confrontation and Due Process Clause with respect to the trial court overruling petitioner's objections concerning the prosecutor's arguments. Petitioner fails to cite to any arguments in the petition or in his brief. He does not cite any controlling Supreme Court precedent which allegedly was violated as a result of the prosecutor's argument. The North Carolina Supreme Court did examine the prosecutor's arguments, but made its decision on state law.

On appeal to the North Carolina Supreme Court, petitioner claimed that the prosecutor's arguments contained improper statements of the prosecutor's own personal beliefs and opinions and were not based on a reasonable interpretation of the evidence. The first challenged argument concerns the prosecutor's implication that Ms. Craven may have asked petitioner why he did not take Natalie to the hospital which was very close, but instead took her to Randleman. The North Carolina Supreme Court found that while there was no explicit testimony to this effect, in context, the prosecutor's remark merely emphasized the unbelievability of petitioner's explanation that after he ran over Natalie with his truck, he took her to his residence in Randleman rather than right over to the hospital.

The next argument the North Carolina Supreme Court examined was when the prosecutor indicated that the bruises were caused by an adult hand and implied that this hand was holding down a little four-year-old and forcibly having intercourse with her while she moaned. The North Carolina Supreme Court found that this was a permissible synthesis of the evidence and a possible scenario. Another argument challenged was the prosecutor's statement that the prosecutor spoke for Natalie, who was dead and who died needlessly just to fulfill the sick desires of petitioner. The North Carolina Supreme Court found that the evidence permitted a finding that petitioner sexually assaulted Natalie and killed her in part of the same violent transaction and that it was not unfair to speculate that petitioner did this to satisfy perverse desires. Finally, petitioner excepted to the prosecutor's statement that Dr. Clark had testified that Natalie was raped. Petitioner contended that the evidence on rape was weak. The North Carolina Supreme Court found that Clark, in fact, testified that the injuries were most indicative of forced intercourse and, therefore, the argument was not improper. During the sentencing phase, petitioner challenged the prosecutor's argument regarding what Natalie was thinking and feeling during the time she was brutally raped and murdered and further objected to the prosecutor's argument that the victim's age was an aggravating circumstance. The North Carolina Supreme Court found under state law that remarks concerning what the victim must have been thinking as she was dying was not grossly improper, particularly considering the fact of the overwhelming evidence against petitioner. With respect to the argument concerning Natalie's age as a ground for imposing the death penalty, the North Carolina Supreme Court found the reference to age merely emphasized the brutality of the crime as well as the depravity of petitioner's acts, and that it did not amount to an improper argument for

an aggravating factor not supported by evidence.

Petitioner fails to show that any of his federal constitutional rights were violated. Petitioner did not raise that question below, nor does he raise it here. Even if he had, the result would not be changed. The standard with respect to prosecutorial comments is not whether they were undesirable or even universally condemned. Rather, petitioner must show that the comment so infected the trial with unfairness to make the resulting conviction a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). To find a constitutional violation, one must look to see whether the conduct was improper, whether it prejudicially affected any other substantive right, whether the remarks were pronounced and persistent creating a likelihood of misleading the jury to defend its prejudice, the strength of the evidence, and any curative actions taken by the court. *See United States v. Brockington,* 849 F.2d 872 (4th Cir.1988). Even if petitioner had raised this standard in state court, the North Carolina Supreme Court's decision would pass muster on the question as not being contrary to, or an unreasonable application of, the law. Here, the case against petitioner was very strong, the comments were a legitimate view of the evidence, and not for the sole purpose of misleading the jury or prejudicing petitioner. Also, the remarks were not pronounced, unusual, overly numerous or unfairly prejudicial.

In ground eleven, petitioner argues that his federal constitutional rights were violated because the trial court submitted to the jury the aggravating circumstances that the murder was especially heinous, atrocious, and cruel. Petitioner argues that this instruction was unconstitutionally vague and overbroad. Petitioner does not cite any case law which has found the instruction of the type used in this case to be unconstitutional. During the direct appeal, petitioner had to concede that the North Carolina Supreme Court has consistently rejected such a claim and, therefore, it found no reason to revisit the matter. In addition, respondent notes that the Fourth Circuit has found this instruction to pass muster in *Huffstetler v. Dixon,* 28 F.3d 1209 (4th Cir.1994) (Table), *cert. denied,* 513 U.S. 1193, 115 S.Ct. 1258, 131 L.Ed.2d 138 (1995). Respondent further noted that the Fourth Circuit has denied relief cases where the heinous, atrocious, and cruel aggravating factor was found by the jury, *citing Boyd v. French,* 147 F.3d 319, 323 (4th Cir.1998), *cert. denied,* 525 U.S. 1150, 119 S.Ct. 1050, 143 L.Ed.2d 56 (1999); and *Sexton v. French,* 163 F.3d 874, 878 (4th Cir.1998), *cert. denied,* 528 U.S. 855, 120 S.Ct. 139, 145 L.Ed.2d 118 (1999). Finally, in *Fisher v. Lee,* 215 F.3d at 457–59, the Fourth Circuit found the additional limiting instructions given by the North Carolina courts in regard to this particular aggravating circumstance to pass constitutional muster and, at a minimum, for ineffective assistance of counsel claims.

Nothing in this case shows that either the trial court or the North Carolina Supreme Court erred in submitting the heinous aggravating factor to the jury, or that the jury was improperly instructed concerning this factor. The North Carolina Supreme Court found that the murder was especially cruel and dehumanizing because of the beating, the amount of bleeding and bruising, and being left in a trash bag, all of which was in addition to the sexual assault and rape. It further found that there was separate evidence to support the "heinousness" aggravating fact apart from the rape evidence. This included the beating, fractures, strangulation,

pain, and anguish. Therefore, the court found that the jury was properly instructed. Petitioner fails to show that the instructions here were a violation of his state law or federal constitutional rights and there is no indication that the North Carolina Supreme's Court decision was contrary to, or an unreasonable application of, federal constitutional law.

In ground twelve, he states that petitioner's rights were violated when the trial court "found mitigating circumstances to be discretionary in issues three and four." For facts, he states that the trial court permitted jurors to disregard mitigating circumstances properly found by one or more jurors. Petitioner fails to cite any Supreme Court case which would make this claim to be a requirement. The North Carolina Supreme Court analyzed the issue under state law and found no error. Petitioner fails to show otherwise.

■ For ground thirteen, petitioner claims that his rights were violated when the trial court denied his request to instruct the jury that he would be sentenced to life for a conviction of first-degree rape. For facts, petitioner states the jurors returned to the courtroom to ask whether they were to sentence petitioner both for first-degree rape as well as murder. Petitioner requested that the jury be instructed that he would be given a mandatory life sentence if convicted of first-degree rape. However, the *"Simmons"* Rule requiring an instruction on parole arises when the defendant's future dangerousness has been put at issue and when there is no possibility of parole. *Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 2126, 147 L.Ed.2d 125 (2000). Petitioner fails to show the situation in this case meets either requirement. The trial court denied the request. Petitioner fails to cite a Supreme Court precedent which would require the trial court to have so instructed the jury. The

North Carolina Supreme Court found that the request was properly denied under state law. Petitioner fails to show that his constitutional rights were violated.

■ Finally, in ground fourteen, petitioner states that his rights were violated when he was prevented from questioning jurors considering their beliefs about parole eligibility. Petitioner fails to show that there is a United States Supreme Court precedent which would require this kind of *voir dire* questioning. The North Carolina Supreme Court found that there was no error in the trial court denying petitioner's request. Petitioner fails to show that his federal constitutional rights were violated.

**IT IS THEREFORE RECOMMENDED** that the petition for writ of habeas corpus (docket no. 8) be denied, that respondent's motion to dismiss (docket nos. 9 & 10) be granted, and that this action be dismissed.

Dec. 14, 2000.